UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WENDELL COLEMAN, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>NAPA COUNTY DEPARTMENT OF CORRECTIONS, et al.,<br><br>　　　　　Defendants. | Case No. 18-cv-04751-SI<br><br>**ORDER DENYING INTERIM RELIEF AND DISMISSING COMPLAINT WITH PARTIAL LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 1, 2, 3 |

Wendell Coleman and Matthew Morgan Howle, inmates currently housed at the Napa County Jail, filed this *pro se* prisoner's civil rights action under 42 U.S.C. § 1983. The complaint is now before the court for review pursuant to 28 U.S.C. § 1915A. The application for appointment of counsel and request for a temporary restraining order and preliminary injunction also are before the court for review.

**BACKGROUND**

The complaint was filed by two inmates at the Napa County Jail, asserting different claims.

One portion of the complaint alleges that correctional officer ("C/O") Merril groped Matthew Howle's "butt cheek" and later pushed him into a concrete wall and chain fence as Merril escorted Howle to a staging area on July 17, 2018. Docket No. 1 at 5. Howle filed a grievance and was interviewed by lieutenant Fernandez and the jail's lieutenant commander, who said they would conduct an investigation. From July 17-21, Howle "was bullied by Merril. He was harrasing and annoying," leading Howle to "feel so scared because [Merril's] position is be-littling." *Id.* (errors in source).

United States District Court<br>Northern District of California

Another portion of the complaint consists of the unsigned "affidavit of Wendell Coleman," in which Coleman complains about his problems with C/O Merrill and other things he dislikes at the Napa County Jail. *Id.* at 6-9. Coleman states that the "privately owned Napa Judicial body and jail are a RICO enterprise," and that he has been "illegally detained on frivolous charges for 6 months." *Id.* at 6. He further states that C/O Merrill pushed and verbally assaulted him on July 17, 2018, and C/O Merrill roughly applied and removed handcuffs to Coleman on July 18, 2018. Coleman states that he discussed his grievance with lieutenant Fernandez on July 26, 2018, but Merrill has not yet been removed from the module. Coleman also states that some person or persons have retaliated against him by denying him certain privileges in the jail. He also states that he has been housed "illegally" for administrative reasons that have not been adequately explained to him, that he has not received a periodic review of his housing. Coleman further states that "this facility has been stealing [his] legal and personal mail," someone opened his legal mail on six occasions outside of his presence, and mail has been delayed. *Id.* at 7. Coleman also states that, in his 11-week stay in the segregated housing unit, more than 15 family visits have been cancelled (without a refund of some charge to his family) and there is a problem with the telephone service. Coleman also states that C/O Merrill would not summon a sergeant for him on July 29, 2018, and instead marked him down as refusing to go to day room. Thereafter, according to Coleman, Merrill and other staff members refused to give him grievance forms throughout the day so that Coleman could see a sergeant; eventually, someone took Coleman's letter to a sergeant but Coleman had not seen the sergeant as of the next day. Coleman further states that the jail does not provide enough green slips and correctional staff resist providing the green slips that inmates use to make requests for services such as access to court, grievance forms, and law library/LRA services. Coleman also states that there was a delay by medical staff in responding to his hernia in March 2018 and thereafter. And he states that the jail has not provided information regarding fire safety, nor has the jail held earthquake drills or flood drills.

The third portion of the complaint appears to be a copy of an unsigned letter sent to a sergeant or lieutenant. *See* Docket No. 1 at 10-16; *see also id.* at 6. In that letter, Coleman complains about his treatment by C/O Merrill and numerous other conditions at the jail that he

finds disagreeable.

## DISCUSSION

A.      Dismissal Of Plaintiff Matthew Howle From This Action

The complaint lists Wendell Coleman and Matthew Howle as plaintiffs. (In another action, a complaint came from Coleman and two other inmates: *Coleman, et al. v. Nguyen, et al.,* No. 18-cv-3468 SI.) The use of co-plaintiffs presents a procedural problem unique to prisoner litigation. The court now considers whether the two plaintiffs should proceed together in a single case or instead should each maintain a separate case due to their physical separation. The court concludes that the plaintiffs should proceed in two separate cases.

"A district court possesses inherent power over the administration of its business." *Spurlock v. Federal Bureau of Investigation*, 69 F.3d 1010, 1016 (9th Cir. 1995); *see Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc.,* 146 F.3d 1071, 1074 (9th Cir. 1998) (district court possesses inherent power to control its docket, as long as power is exercised in a manner consistent with rules and statutes). This power includes the authority to promulgate and enforce rules for the management of litigation and the court's docket. *Spurlock*, 69 F.3d at 1016 (citations omitted); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (inherent powers are tools for "'control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases'").

Basic case management principles of delay reduction and avoidance of confusion call for the plaintiffs' claims to proceed in separate cases. The main problem with having unrepresented inmates proceeding as co-plaintiffs is that inmates lack control over their ability to access each other to prepare documents and prosecute a case. Inmates are frequently moved; even inmates who initially are physically close to each other often do not remain so for the months or years that it takes for a case to work its way through to judgment.

Here, although the two plaintiffs are incarcerated near each other at the Napa County Jail, they do not now have ready access to each other. They are housed in separate cells in the segregated housing unit. *See* Docket No. 1 at 1. Coleman reports that he is locked in his cell 23 hours a day, *id.* at 6, and staff members delay and interfere with his mail, *id.* at 7. At least

Coleman thinks he does not belong in the segregated housing unit and wants to be released to general population.  The plaintiffs' physical separation has and will impact this litigation because they are unable to work on the case together.  The lack of coordination is already on display in the complaint, which consists of Howle's claims on a couple of pages, and Coleman's claims on the rest of the document, with a confusing signature arrangement (i.e., only Coleman signed the complaint form, only Howle signed the portion describing Howle's claims, and no one signed the portion describing Coleman's claims) which leaves the reader guessing as to which plaintiff is in agreement with which part of the complaint.[1]

The two plaintiffs also may not have access to each other in the future to prepare documents and to discuss the case.  Perhaps one plaintiff will be moved to another part of the jail or to prison, or be released from custody – all of which will make their joint prosecution of this case inordinately more difficult.  The slow pace of plaintiffs' communications with each other will result in extensive delays at each point in the litigation where they are required to file anything with the court.  Neither plaintiff has the authority to represent the other.  *See Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962) ("a litigant appearing in propria persona has no authority to represent anyone other than himself").  Thus, this case will be delayed as any potential filing from the plaintiffs is shuttled back and forth between the plaintiffs until both are comfortable signing it.  One alternative is to permit the plaintiffs to file separate documents, but this essentially results in two cases within a case, which has few benefits to match the substantial confusion caused by it.

Another factor weighing in favor of plaintiffs proceeding in separate cases is that the two plaintiffs' claims in the complaint do not appear arise out of the same transaction or occurrence.  The facts of the plaintiffs' claims are such that it would be less confusing for the parties and the court to handle the claims if the plaintiffs go forward in separate cases.  Coleman's claims are different from Howle's claims, and the two plaintiffs may be on different footing in their efforts to

---

[1] Another example of a confusing set of signatures is in the application for appointment of counsel: the first page of the application for counsel is dated July 28, 2018, and signed by Coleman and Howle, yet the second page is dated the next day and is signed only by Coleman.  Docket No. 3.  This causes uncertainty as to whether Howle disagreed with, or was unaware of, the statements made by Coleman on the second page.

1    exhaust administrative remedies for their claims.   Separating the plaintiffs and their claims will

2    make the cases easier to manage and resolve.

3        For these reasons, the court exercises its inherent power over the administration of its

4    business and orders that each plaintiff proceed in a separate action rather than as co-plaintiffs.

5    Matthew Howle will be dismissed from this action.[2]  The dismissal is without prejudice to Howle

6    filing a new complaint in which he asserts only his claims.  All further filings filed by Howle

7    concerning his claims should be filed in that new action using that case number and listing only

8    Howle as a plaintiff.  All further filings by Coleman concerning his claims must be filed in the

9    present case (i.e., Case No. 18-4751 SI) and must list only Wendell Coleman as a plaintiff.

10   Because Howle is being dismissed from this action, the court will not further discuss his claims.

11

12   B.    Review of Complaint

13       A federal court must engage in a preliminary screening of any case in which a prisoner

14   seeks redress from a governmental entity or officer or employee of a governmental entity.  See 28

15   U.S.C. § 1915A(a).  The court must identify any cognizable claims, and dismiss any claims which

16   are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary

17   relief from a defendant who is immune from such relief.  *See id*. at § 1915A(b)(1),(2).  *Pro se*

18   complaints must be liberally construed.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

19       To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) that a

20   right secured by the Constitution or laws of the United States was violated, and (2) that the

21   violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487

22   U.S. 42, 48 (1988).

23       There are several problems with the complaint.  Leave to amend is granted so that

24   Coleman may attempt to cure the deficiencies in his complaint.

25

26       [2] The dismissal of Matthew Howle from this action raises no genuine statute of limitations

27   concern because his claim accrued less than a month ago.  With any reasonable diligence, he will
     be able to file a new action well within the two-year limitations period for filing an action under
     42 U.S.C. § 1983.

28

5

First, Coleman does not allege whether he was a pretrial detainee or had been convicted when the events and omissions giving rise to the complaint occurred. His status affects the analysis of his claims because the constitutional basis for some claims is different, and different standards may apply, depending on whether the inmate is a pretrial detainee or convict at the relevant time. For example, a deliberate indifference to medical needs claim arises under the Fourteenth Amendment for a pretrial detainee, and arises under the Eighth Amendment for a convict. If a plaintiff has transitioned from being a pretrial detainee to a convict (or vice-versa), both standards may need to be applied -- with one standard being applied to the events that occurred when the person was a pretrial detainee and a different standard being applied to the events that occurred after he was convicted. In his amended complaint, Coleman must allege whether he was a pretrial detainee or a convict. If he had one custodial status at one time and another custodial status at another time, he should state the dates during which he was a convicted prisoner and the dates during which he was only a pretrial detainee.

Second, Coleman alleges that he was "pushed several times" and verbally assaulted by C/O Merrill on July 17, 2018. Docket No. 1 at 6. An Eighth Amendment violation may occur when prison officials "maliciously and sadistically use force to cause harm, but "not every malevolent touch by a prison guard or official gives rise to an Eighth Amendment violation." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* (citation omitted). Coleman needs to provide a more specific description of the force used by Merrill on July 17, 2018 so the court may evaluate his claim.

Third, the allegations that Merrill verbally harassed Coleman fail to state a claim because verbal harassment is not actionable under 42 U.S.C. § 1983. *See Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997), *overruled in part on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (directing vulgar language at prisoner does not state constitutional claim); *Burton v. Livingston,* 791 F.2d 97, 99 (8th Cir. 1986) ("mere words, without more, do not invade a federally protected right"); *cf.*

6

*Watison v. Carter*, 668 F.3d 1108, 1113 (9th Cir. 2012) ("'the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons' of which 'we do not approve,' but which do not violate the Eighth Amendment.").

Fourth, Coleman does not state a claim for retaliation. Within the prison or jail context, "a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Coleman fails to clearly identify who retaliated against him, or allege facts suggesting that the retaliatory actions were because of his protected conduct, or that the retaliatory acts chilled the exercise of his First Amendment rights. In his amended complaint, Coleman must allege facts supporting the existence of all five elements of the retaliation claim and link one or more defendants to the claim.

Fifth, Coleman appears to complain about the processing of some of his inmate appeals, e.g., he alleges that, despite his grievance about C/O Merrill, C/O Merrill has not been removed from the module. There is no federal constitutional right to a prison or jail administrative appeal or grievance system for California inmates. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Prison and jail officials are not liable for a due process violation for simply failing to process an appeal properly, denying an inmate appeal or granting an inmate appeal. A claim under § 1983 for a due process violation is not stated against any lieutenants Fernandez and Wilson for the handling of Coleman's inmate grievances and appeals.

Sixth, many of the statements in the complaint are more of an airing of generalized grievances about life in the jail, rather than allegations of particular actions by specific persons who allegedly violated Coleman's federal rights. (For example, the complaint states that one or more persons opened Coleman's mail on several occasions during a multi-month period, and one or more persons cancelled visits on several occasions during an 11-week period.) In his amended complaint, Coleman needs to specify who the wrongdoers were if he wants to pursue claims

against them. Coleman must link defendants to his claims by alleging facts showing the basis for liability for each individual defendant. He should not refer to them as a group (e.g., "the defendants"); rather, he should identify each involved defendant by name and link each of them to his claim by explaining what each defendant did or failed to do that caused a violation of his constitutional rights. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (liability may be imposed on individual defendant under § 1983 only if plaintiff can show that defendant proximately caused deprivation of federally protected right). A supervisor may be liable under § 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

If Coleman does not know the true name of the alleged wrongdoers, he may use Doe defendant designations, so that each person is separately identified as a Doe defendant, e.g., John Doe # 1, John Doe # 2, Jane Doe # 1, etc. Although the use of Doe defendants is acceptable to withstand dismissal of the complaint at the initial review stage, using Doe defendants creates its own problem: those persons cannot be served with process until they are identified by their real names. The burden remains on the plaintiff; the court will not undertake to investigate the names and identities of unnamed defendants. Coleman must provide the true names and identities of the Jane Doe and John Doe defendants within 120 days of the date of this order or they may be dismissed without prejudice to him filing another action against them. If there are multiple unknown persons, each unknown defendant must be identified as a separate John Doe or Jane Doe, e.g., John Doe # 1, Jane Doe # 1, Jane Doe # 2, etc., so that eventually each John Doe and Jane Doe defendant can be replaced by a separate person when his or her true name becomes known.

Seventh, the complaint does not state a claim against the Napa County Department of Corrections or its director. There is no respondeat superior liability under § 1983, i.e., no liability under the theory that one is liable simply because he employs a person who has violated a plaintiff's rights. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978)*; Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The mere fact that the alleged individual wrongdoer was

8

employed by a defendant would not be a sufficient basis on which to hold the employing defendant liable. Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort, *see Monell,*436 U.S. at 690. To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation. *See Plumeau v. School Dist. #40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997). For municipal liability, a plaintiff must plead sufficient facts regarding the specific nature of the alleged policy, custom or practice to allow the defendant to effectively defend itself, and these facts must plausibly suggest that the plaintiff is entitled to relief. *See AE v. County of Tulare*, 666 F.3d 631, 636-37 (9th Cir. 2012). It is not sufficient to merely allege that a policy, custom or practice existed or that individual officers' wrongdoing conduct conformed to a policy, custom or practice. *See id.* at 636-68.

Eighth, Coleman has no standing to assert claims based on the violation of other inmates' rights. His amended complaint may include only claims about violations of Coleman's own rights.

Ninth, Coleman apparently wants to challenge his placement and retention in the segregated housing unit, but he fails to state a claim because he does not link any defendant to the claim. In his amended complaint, Coleman must be careful to allege facts showing the basis for liability for each individual defendant he proposes to hold liable for his placement and retention in the segregated housing unit.

C. Application For Appointment of Counsel

Coleman has filed an application for appointment of counsel to represent him in this action. Docket No. 3. A district court has the discretion under 28 U.S.C. §1915(e)(1) to designate counsel to represent an indigent civil litigant in exceptional circumstances. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). This requires an evaluation of both the

likelihood of success on the merits and the ability of the plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved. *See id.* Neither of these factors is dispositive and both must be viewed together before deciding on a request for counsel under § 1915(e)(1). Here, exceptional circumstances requiring the appointment of counsel are not evident at this time. Although he needs to file an amended complaint to provide additional information about several of his claims, Coleman has been able to adequately articulate his claims. The court is unable to evaluate the likelihood of success on the merits on the record before the court. The application for appointment of counsel is DENIED. Docket No. 3.

D.      Request For Temporary Restraining Order and Preliminary Injunction

Coleman has filed a request for a temporary restraining order and preliminary injunction enjoining defendants, their agents, employees, and all other persons acting in concert and participation with them "from contacting or being within 500 yards of either plaintiff. Both plaintiffs are to be released or moved to Mens West." Docket No. 2 at 1.

A temporary restraining order preserves the status quo and prevents irreparable harm until a hearing can be held on a preliminary injunction application. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). A temporary restraining order is an "extraordinary remedy" that the court should award only when a plaintiff makes a clear showing that he is entitled to such relief. *See Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008). The standards for a temporary restraining order are the same as those for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm that would result if an injunction were not issued, (3) the balance of equities tips in favor of the plaintiff, and (4) an injunction is in the public interest. *See Winter*, 555 U.S. at 20.[3] The irreparable injury must be both likely and

---

[3] *Winter* did not, however, completely reject the validity of the sliding scale approach to preliminary injunctions. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). Under the "sliding scale" approach used in the Ninth Circuit – also dubbed the "serious question" test in *Alliance for Wild Rockies* -- "the elements of the preliminary injunction test are

10

immediate. *See id*. at 22; *Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.")

Coleman is not entitled to a temporary restraining order or preliminary injunction to compel his jailers to stay away from him, to compel his transfer to another facility, or to compel his release from custody. Coleman's one-page request does not demonstrate any irreparable harm that he would suffer if interim relief is not provided, let alone irreparable harm that is both likely and immediate. His complaint is an ordinary civil rights complaint from an inmate complaining about myriad conditions that he has experienced in custody. No irreparable harm appears imminent in the allegations of the complaint. Additionally, the pleading deficiencies in his complaint prevent the court from determining that there is any likelihood of success on the merits of his claims.

Coleman cannot obtain a temporary restraining order or injunction to compel his release from custody. A writ of habeas is the exclusive remedy for a prisoner who seeks "'immediate or speedier release'" from confinement. *Skinner v. Switzer*, 562 U.S. 521, 533-34 (2011) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)); *see also Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("we hold today that when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus"). Because a petition for writ of habeas corpus is the exclusive method by which a prisoner may seek release from custody, a temporary restraining order or injunction in a civil rights action is inappropriate. Coleman has a petition for writ of habeas corpus pending in the U.S. District Court.

For the foregoing reasons, plaintiff's motion for a temporary restraining order and

balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131. Thus, even after *Winter*, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132 (citations omitted).

preliminary injunction is DENIED. Docket No. 2.

## CONCLUSION

Plaintiff Matthew Howle is dismissed from this action without prejudice to him filing a new action to assert his claims.

The complaint is dismissed with leave to amend. Coleman must file an amended complaint no later than **September 14, 2018**, and must include the caption and civil case number used in this order as well as the words AMENDED COMPLAINT on the first page. Coleman is cautioned that his amended complaint must be a complete statement of his claims, except that he does not need to allege any claim that has been dismissed without leave to amend. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). Failure to file an amended complaint by the deadline will result in the dismissal of the deficient claims or the entire action.

The application for appointment of counsel and the request for a temporary restraining order and preliminary injunction are DENIED. Docket Nos. 2, 3.

**IT IS SO ORDERED**.

Dated: August 14, 2018

_____
SUSAN ILLSTON
United States District Judge