UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WENDELL COLEMAN,

Plaintiff,

v.

NAPA COUNTY DEPARTMENT OF CORRECTIONS, et al.,

Defendants.

Case No. 18-cv-04751-SI

**ORDER OF SERVICE AND PARTIAL DISMISSAL**

Re: Dkt. No. 8

Wendell Coleman and another inmate at the Napa County Jail filed this *pro se* prisoner's civil rights action under 42 U.S.C. § 1983. The court dismissed the other inmate from the action and dismissed the complaint with leave for Coleman to file an amended complaint. Coleman's amended complaint is now before the court for review pursuant to 28 U.S.C. § 1915A.

**BACKGROUND**

The amended complaint concerns a wide variety of conditions at the Napa County Jail that Coleman found disagreeable during his stay at the jail as a pretrial detainee. As with the original complaint, the amended complaint concerns a wide variety of jail conditions and Coleman frequently fails to identify the wrongdoers. The amended complaint alleges:

A.  <u>Claims against Merrill, Wilson and Fernandez</u>

Correctional officer (C/O) Merrill "has tormented [Coleman] since Day 1." Docket No. 8 at 4. Coleman has been filing grievances against C/O Merrill since March 2018. *Id.* at 5. In March 2018, C/O Merrill locked Coleman down for refusing to clean a drawing on the wall that Coleman had not drawn. *Id.* at 8. In April 2018, C/O Merrill entered Coleman's cell, picked up a chair, and "rammed it into [Coleman] as he walked by with it." *Id.* at 4. On July 17, 2018, C/O Merrill grabbed Coleman's arm and pushed him against a wall. The next day, July 18, Merrill handcuffed Coleman "so tight it broke flesh and caused bruising." *Id.*

Since February 2018, C/O Merrill "has given anxiety by constantly gazing at" Coleman, who feels "it is sexual in nature." *Id.*

Several times on unstated dates, C/O Merrill took Coleman's "modified pens" – modified in that Coleman had wrapped them with paper -- even though he did not take modified pens that other inmates had. *Id.*

During a cell search, C/O Merrill threw away letters, some discovery, and a "civil suit pack" Coleman had filed against Merrill. *Id.* at 4.

C/O Merrill and lieutenant Wilson continue to deliver opened legal mail and legal research results. *Id.* at 9.

While Coleman was housed in the SHU, C/O Merrill let him out of the cell before 8:00 a.m., "thus preventing decent phone times." *Id.* at 7.

Coleman informed lieutenant Fernandez about Merrill's mistreatment of Coleman. Fernandez "refused to insure [Coleman's] safety until Sept. of 2018" after Coleman was assaulted in July. *Id.* at 5. Merrill now must be supervised when escorting inmates. *Id.*

Coleman filed many grievances about a variety of conditions. Lieutenant Wilson "unprocessed" about 15 grievances over two months, deeming them to be vexatious in nature. *Id.*

Lieutenant Wilson had Coleman moved to a special housing unit from general population for administrative reasons. *Id.* Coleman did not receive periodic reviews of his placement in the special housing unit and was not told of the reason for his move to that unit. Coleman indicates that the special housing unit was a "23 hr. lockdown isolation unit with violent criminals." *Id.* On September 28, Coleman was told by a staff member that he had been moved because he filed grievances against staff. Coleman filed another grievance but did not get a response within a week.

Lieutenant Wilson made an unspecified false statement to a psychiatrist in August 2018 that had a negative influence on Coleman's psychiatric assessment." *Id.* at 5-6.


B.  Claims Against Other People

A psychiatrist made a false report that Coleman had refused evaluation, refused medication, and had a history of write-ups. That statement was submitted as evidence in a court case in Napa.

2

(Although he does not describe the court case in his amended complaint, the case appears to be the criminal case pending against Coleman.) Coleman was transferred from the jail to Napa State Hospital for a pretrial evaluation of his competency to stand trial. *See Coleman v. Allison Social Worker*, Case No. 19-cv-964 SI at Docket No. 1 at 3 (complaint describing various problems in his criminal case, including psychiatrist appointed to evaluate him); *id.* at Docket No. 1-1 at 7 (Coleman's note dated December 6, 2018, stating, "I have been declared incompetent by the evaluator. I am at Napa State Hospital.")

On September 4, 2018, Coleman went to court for a hearing. While waiting for a couple of hours, he developed a migraine headache and requested to be taken to the court or to his cell. As he was being taken back to his cell, he asked someone if he could go back after he felt better and was told "no" by an unidentified staff member. *Id.* at 6. Coleman repeatedly asked to make a phone call to the court, but was not allowed to do so by unidentified staff members. *Id.* Elsewhere, he alleges that the court clerk does not accept calls from the inmate and that any communication to the judge must be in writing. *Id.* at 7.

From May 11 through August 7, Coleman was housed in the SHU. He was not given a predictable schedule as to when he would be allowed out of his cell and this impeded his ability to make phone calls to family members, lawyers and his therapist. *Id.* at 7.

Coleman was moved from the SHU to administrative segregation on August 7, 2018. In the administrative segregation unit, the eight inmates rotated their time out of the cell beginning at 6:30 a.m. *Id.* at 7. (The setup allowed four inmates out of their cell from 6:30-10:30, 2 inmates from 12:30-2:30, and 2 inmates out from 6:30-8:30, with the times advanced one hour per day per cell. *Id.* at 9.) This schedule prevented phone access to the Public Defender's office on some days. *Id.* at 7.

He is not sure who caused the problem, but Coleman's mail has not made it to its final destination on several occasions. *Id.* at 8.

Coleman did not receive a response to his request for research within about a week. *Id*

Coleman has a hernia. *Id.* He has been seen 11 times by nurses and 4 times by doctors, who have done x-rays, an ultrasound, and given medication. *Id.* Coleman was told that he would be

3

scheduled for an appointment with an outside doctor, but that had not occurred for a couple of months. Outsiders were able to view his genitals during an ultrasound because the door to the doctor's office remains open during visits. *Id.*

Coleman developed a baker's cyst in March 2018. When he received medical attention six weeks later, he received Motrin and a knee brace, which he apparently thought was inadequate. *Id.*

Coleman wrote a letter to the director about unspecified religious services. Corporal Davidson told Coleman that he would have to reach out to a church to arrange to have someone come in to conduct a service; Coleman responded that it would be easier to allow inmates in his unit participate with a different unit in the jail. *Id.* at 9.

On or about August 24, 2018, Coleman complained that C/O McGovern was waking up everyone in the administrative segregation unit by yelling "med pass" at 4:00 a.m. when he distributed medications. *Id.* at 10. Coleman and McGovern "had a verbal exchange"; McGovern later returned and took the remote control for the television. *Id.* Another inmate, upset at not having television, threw a cup of urine on Coleman. C/O Sauer refused to move the inmate but "had a talk" with that inmate. *Id.* The inmate spit on Coleman that night. The next day, Coleman complained to the sergeant and the sergeant immediately removed the offending inmate.

Coleman was denied yard time for 9 days in a row on unstated dates by unidentified persons who also refuse to bring him forms to file complaints "1/2 the time." *Id.*

**DISCUSSION**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b)(1),(2). *Pro se* complaints must be liberally construed. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation

4

was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

A.  Dismissal of Improperly Joined Defendants

Under Federal Rule of Civil Procedure 20(a) all persons may be joined in one action as defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and if "any question of law or fact common to all defendants will arise in the action."

Coleman's amended complaint complains of too many different problems with too many different defendants. The amended complaint has an identifiable set of claims against defendants Merrill, Wilson and Fernandez, and then a group of claims against other defendants, most of whom are unnamed, about miscellaneous problems at the jail. That latter group of claims includes the claims against the psychiatrist for a false report; against unidentified persons for not taking Coleman back to court or allowing him to call the court after he was returned to his cell when he became ill; against the court clerk and the judge who would not accept phone calls; against the person(s) who created the schedules for the jail's security housing unit and administrative segregation unit; against the person(s) who caused Coleman's outgoing mail not to make it to its final destination; against the slow provider(s) of legal research; against the medical care provider(s) who did not timely schedule an appointment with an outside doctor and treated his baker's cyst; against the person(s) who left the door open during Coleman's visits to the doctor; against the person(s) who did not provide him religious services; against the correctional officer who took the remote control for the television after Coleman had a verbal exchange with him; and against the persons who denied him yard time and refused to bring him forms to file complaints. The court earlier had instructed Coleman that he needed to link defendants to particular claims, i.e., he needed to "identify each involved defendant by name and link each of them to his claim by explaining what each defendant did or failed to do that caused a violation of his constitutional rights." Docket No. 6 at 8. The fact that Coleman named defendant Merrill, Wilson and Fernandez for some claims, and failed to name them in these other claims leads the court to conclude that these three defendants are not the defendants for these other

alleged constitutional violations. The claims against Merrill, Wilson and Fernandez are not "with respect to or arising out of the same ... series of transactions or occurrences," Fed. R. Civ. P. 20(a), as the other claims. The defendants for the other claims are not properly joined with defendants Merrill, Wilson and Fernandez. The improper joinder problem can be solved by dismissing or severing the improperly joined parties. See Fed. R. Civ. P. 21.

The court must conduct a prejudice analysis, including potential statute of limitations problems, before selecting dismissal over severance. *See Rush v. Sport Chalet, Inc*., 779 F.3d 973, 975 (9th Cir. 2015). The statute of limitations for a § 1983 claim filed in California is two years. *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); Cal. Civ. Proc. Code § 335.1. Incarceration of the plaintiff is a disability that may toll the statute for a maximum of two years for a plaintiff who is in prison "for a term less than for life." See Cal. Civ. Proc. Code §§ 352.1, 357. A continuously incarcerated plaintiff thus has four years to bring his action. None of Coleman's claims would be time-barred by dismissal of the defendants who were joined improperly because those claims appear to be based on events occurring on and after November 2017, when Coleman was first housed at the Napa County Jail. Coleman appears to be at least many months away from the expiration of the statute of limitations deadline for him to file a new § 1983 action asserting the claims against the improperly joined defendants. Dismissal of the improperly joined defendants also is preferable because Coleman has struggled to provide a coherent pleading making further amendment of the claims against those defendants (most of whom he still has not identified by name) necessary, and it is preferable that Coleman start over with new complaints limited to his claims against those defendants. This action has not progressed beyond the pleading stage, so there is no effort that will have been wasted in this case. For these reasons, the court finds that there would be no prejudice to Coleman due to the dismissal of the improperly-joined defendants and therefore selects dismissal over severance. Accordingly, the court will dismiss from this action the following defendants: Napa County Department of Corrections, C/O Underwood, C/O Sauer, C/O Plain, Thompson, Jane Doe 1-5, and John Doe 1-8. Additionally, because Coleman did not provide names for many of the defendants for his claims (other than Merrill, Wilson and Fernandez), the court makes clear that all claims against any defendant – named or not named (except for those

6

against Merrill, Wilson and Fernandez) -- are being dismissed. The dismissal of these defendants is without prejudice to Coleman filing new actions to assert his claims against those parties. (This is not to say that the claims against the dismissed defendants are meritorious, but simply that those claims must be pursued in separate actions, if at all.)

Having dismissed all the improperly joined defendants and the claims against them, the only claims that remain for adjudication are Coleman's claims against defendants Merrill, Wilson and Fernandez.

B. <u>Claims Against Merrill, Wilson and Fernandez</u>

<u>Excessive force:</u> To prove an excessive force claim under § 1983, a pretrial detainee must show that the "force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). Liberally construed, the amended complaint states a claim against C/O Merrill for the use of excessive force on Coleman in April 2018 and on July 17-18, 2018.

<u>C/O Merrill's "gazing" at Coleman:</u> Prisoners retain a limited right to bodily privacy, and pretrial detainees have at least as great a right to bodily privacy. *See Byrd v. Maricopa County Board of Supervisors*, 845 F.3d 919, 924 (9th Cir. 2017) (reversing dismissal for failure to state a claim when pretrial detainee alleged that defendants' policy of permitting female guards to regularly view his bathroom and shower use from 4-5 feet away violates his 4th and 14th Amendment rights). Even liberally construed, Coleman's allegation that C/O Merrill has gazed at him in a way that Coleman thinks is sexual does not state a § 1983 claim. It is common sense that guards look at prisoners as part of guarding them, and Coleman has not alleged facts to plausibly suggest that Merrill's observation of him was more than guarding him. Even a leering look would be akin to the verbal harassment that courts have held to be nonactionable under § 1983. *See, e.g., Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), *amended* 135 F.3d 1318 (9th Cir. 1998) (disrespectful and assaultive comments by prison guard not enough to implicate 8th Amendment); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (directing vulgar language at prisoner does not state constitutional claim); *Burton v. Livingston*, 791 F.2d 97, 99 (8th Cir. 1986) ("mere words, without

7

more, do not invade a federally protected right"). The claim is dismissed without leave to amend.

Property claims: Allegations that a plaintiff has been deprived of his property negligently or intentionally without a pre-deprivation hearing do not state a due process claim under § 1983 if the deprivation was random and unauthorized, *see Parratt v. Taylor*, 451 U.S. 527, 535-44 (1981) (state employee negligently lost prisoner's hobby kit), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional destruction of inmate's property), because California provides an adequate state post-deprivation remedy, *see Zinermon v. Burch*, 494 U.S. 113, 128-29 (1990) (where state cannot foresee and therefore provide meaningful hearing prior to deprivation, statutory provision for post-deprivation hearing or common law tort remedy for erroneous deprivation satisfies due process). The allegation that C/O Merrill took away Coleman's modified pens and threw away letters during a cell search show random and unauthorized property deprivations that are not actionable under § 1983. The claim is dismissed without leave to amend.

Confiscation of legal materials: Inmates have a right under the federal constitution to access the courts. The destruction or confiscation of an inmate's legal papers may violate his constitutional right of access to the courts if it causes him an "actual injury" to court access, i.e., some specific instance in which an inmate was actually denied access to the courts. *See Silva v. Di Vittorio*, 658 F.3d 1090, 1101-03 & n.8 (9th Cir. 2011), *overruled on other grounds in Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015); *see, e.g., id.* at 1104 (allegation that defendants' actions caused several pending suits to be dismissed adequately alleged an actual injury); *Vigliotto v. Terry*, 873 F.2d 1201 (9th Cir. 1989) (temporary deprivation of legal materials from inmate's cell did not deprive him of meaningful access to the courts). Liberally construed, Coleman's allegation that C/O Merrill confiscated discovery and a "civil suit pack" from his cell during a cell search appears to state a cognizable § 1983 claim for interfering with Coleman's right of access to the courts.

Opened "legal mail": The First Amendment protects an inmate's right to be present when his civil legal mail is opened. *See Hayes v. Idaho Corr. Center*, 849 F.3d 1204, 1208 (9th Cir. 2017). And the Sixth Amendment protects an inmate's right not to have correctional staff read, or open outside his presence, legal mail relating to his criminal case. *See id.* at 1208-09 (citing *Mangiaracina v. Penzone*, 849 F.3d 1191 (9th Cir. 2017)). Liberally construed, the amended complaint appears to state a cognizable § 1983 claim against C/O Merrill and lieutenant Wilson for opening Coleman's legal mail outside his presence.

Grievances/Inmate Appeals: There is no federal constitutional right to a prison or jail administrative appeal or grievance system for California inmates. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Prison and jail officials are not liable for a due process violation for simply failing to process an appeal properly, denying an inmate appeal or granting an inmate appeal. A claim under § 1983 for a due process violation is not stated against lieutenant Wilson for the alleged mishandling of Coleman's inmate grievances and appeals. The claim is dismissed without leave to amend.

Telephone time: Coleman's allegation C/O Merrill let him out of his cell before 8:00 a.m., thereby making his telephone calls inconvenient, fails to state a claim. Coleman does not allege that he was denied telephone calls – only that he did not have convenient telephone times. There is no constitutional right to telephone access at only times *most convenient* to the inmate. Moreover, Coleman's amended complaint indicates that the times inmates were allowed out of their cells rotated, so that some days he was let out of his cell at different times, which would have made any inconvenient telephone times only occasional. The claim is dismissed without leave to amend.

False statement: Coleman's allegation that lieutenant Wilson made a false statement to a psychiatrist does not state a claim under § 1983. False charges alone are not actionable under § 1983 because falsely accusing a person of misconduct does not violate a right secured by the Constitution or laws of the United States. For a false accusation to be potentially actionable, the false charge must implicate some constitutional right, such as the Fourteenth Amendment's right to due process. *See Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002) (no § 1983 claim was stated for allegedly

9

false charges because the disciplinary confinement imposed was too short to amount to an atypical and significant hardship for due process purposes.) The clam is dismissed.

Placement in special housing unit: The Due Process Clause of the Fourteenth Amendment of the United States Constitution protects individuals against governmental deprivations of life, liberty or property without due process of law. When a pretrial detainee challenges conditions of his confinement, "the proper inquiry is whether those conditions amount to punishment," because the Due Process Clause does not permit punishment "prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). For example, disciplinary segregation as punishment for violation of jail rules and regulations cannot be imposed without due process, i.e., without complying with the procedural requirements of *Wolff v. McDonnell*, 418 U.S. 539 (1974). *See Mitchell v. Dupnik*, 75 F.3d 517, 523-26 (9th Cir. 1996). The procedural protections required by *Wolff* in a disciplinary proceeding include written notice, time to prepare for the hearing, a written statement of decision, allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the accused where the inmate is illiterate or the issues are complex. *Wolff*, 418 U.S. at 564-67. There also must be some evidence to support the disciplinary decision, *see Superintendent v. Hill*, 472 U.S. 445, 454 (1985), and the information that forms the basis for the disciplinary action must have some indicia of reliability. *See Cato v. Rushen*, 824 F.2d 703, 704-05 (9th Cir. 1987). Assuming for present purposes that a pretrial detainee has the same rights as a convicted prisoner being put in administrative segregation, when jail officials initially determine whether an inmate is to be segregated for administrative reasons due process requires that they hold an informal nonadversary hearing within a reasonable time after the inmate is segregated, inform the inmate of the charges against him or the reasons segregation is being considered, and allow the inmate to present his views. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1091-92 (9th Cir. 1986). Periodic review of the inmate's confinement in segregated housing is required. *See Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983). Liberally construed, the allegation that lieutenant Wilson caused Coleman to be moved to a special housing unit where he was in isolation for 23 hours per day and did not inform Coleman why he was moved to that unit or provide periodic reviews of that placement states a cognizable claim for a due process violation by lieutenant Wilson.

Retaliation: Within the prison or jail context, "a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Liberally construed, the *pro se* amended complaint states a cognizable retaliation claim against lieutenant Wilson for allegedly moving Coleman to segregated housing because he had filed grievances against staff. Liberally construed, the *pro se* amended complaint also states a cognizable retaliation claim against C/O Merrill for taking adverse actions against Coleman in response to Coleman's complaining about his mistreatment. Although Coleman's pleading does not specifically articulate that Merrill retaliated against him, a retaliation claim is suggested by the allegations that Coleman repeatedly had complained about Merrill's treatment, and Merrill in response took numerous adverse actions against Coleman (even if some of those actions do not independently amount to a violation of a constitutional right), such as placing Coleman on lockdown when he complained about having to clean up someone else's drawing, using excessive force on him, taking away his modified pens, throwing away legal materials during a cell search, opening his legal mail, and letting him out of his cell early.

Failure to protect: Jail officials may be liable under the Fourteenth Amendment for failure to protect a pretrial detainee from a risk of harm by other inmates. To state a claim that an individual officer failed to protect a pretrial detainee, a plaintiff must allege facts showing these elements:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc), *cert. denied,* 137 S. Ct. 831 (2017).

Coleman alleges that lieutenant Fernandez was slow to respond to his complaints about C/O Merrill's "harassment, awkward gazing, discrimination and excessive force"; Fernandez launched

an investigation in July 2018 (which is the month in which Merrill allegedly grabbed Coleman and handcuffed him too tightly) and did not "insure [Coleman's] safety" until September 2018. Docket No. 8 at 5. Even with liberal construction, the amended complaint does not state a claim for a Fourteenth Amendment violation based on a failure to protect because the conditions from which Coleman allegedly needed protection did not place Coleman at a substantial risk of suffering serious harm.

Assuming for purposes of argument that Merrill's July 2018 uses of force (i.e., grabbing Coleman's arm and tightly handcuffing him) are viewed as a putting Coleman at a substantial risk of serious harm – a dubious proposition itself– the amended complaint does not state a claim for a failure to protect because the amended complaint alleges that lieutenant Fernandez did something about the situation that month, i.e., he launched an investigation. And although the amended complaint alleges that lieutenant Fernandez "refused to insure [Coleman's] safety until Sept. of 2018," *id.* at 5, no further physical contact by C/O Merrill is alleged to have occurred after the commencement of the investigation by lieutenant Fernandez. In short, Coleman did not suffer any injuries due to the alleged failure to protect by lieutenant Merrill. The failure to protect claim is dismissed without leave to amend.

**CONCLUSION**

1. Liberally construed, the complaint states cognizable § 1983 claims against C/O Merrill and lieutenant Wilson as described above. All other claims and defendants are dismissed.

2. The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, and a copy of the amended complaint, and a copy of this order upon correctional officer Merrill and correctional lieutenant Wilson, both of whom apparently are on the correctional staff at the Napa County Jail.

3. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

12

a. No later than **June 14, 2019**, defendants must file and serve a motion for summary judgment or other dispositive motion. If defendants are of the opinion that this case cannot be resolved by summary judgment, defendants must so inform the court prior to the date the motion is due. If defendants file a motion for summary judgment, defendants must provide to plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012).

b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the court and served upon defendants no later than **July 12, 2019**. Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

c. If defendants wish to file a reply brief, the reply brief must be filed and served no later than **July 26, 2019**.

4. Plaintiff is provided the following notices and warnings about the procedures for motions for summary judgment:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

If a defendant files a motion for summary judgment for failure to exhaust administrative remedies, he is seeking to have the case dismissed. As with other defense summary judgment motions, if a motion for summary judgment for failure to exhaust administrative remedies is granted, the plaintiff's case will be dismissed and there will be no trial.

5. All communications by plaintiff with the court must be served on a defendant's counsel by mailing a true copy of the document to defendant's counsel. The court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, plaintiff may mail a true copy of the document directly to defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

6. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

7. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

8. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to this court for consideration in this case.

**IT IS SO ORDERED**.

Dated: April 1, 2019

SUSAN ILLSTON
United States District Judge